**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

DWAYNE KEITH SUMNER,

Defendant.

**Criminal No. 00-383-01 (CKK)**

**MEMORANDUM OPINION**
(March 30, 2022)

Pending before this Court is Defendant Dwayne Keith Sumner's [56] Supplemental Motion

to Vacate Judgment under 28 U.S.C. § 2255, and the United States' [63] Opposition thereto.[1]

Defendant Dwayne Keith Sumner ("Defendant" or "Mr. Sumner") is currently serving a twenty-

five-year sentence after entering a guilty plea to one count of Attempted Armed Bank Robbery, in

violation of 18 U.S.C. § 2113(a) and (d).  *See* Judgment, ECF No. 24.

---

[1] In connection with this Memorandum Opinion and the accompanying Order, the Court considered: Defendant's Emergency Motion for Authorization to File a Second or Successive Motion Under 28 U.S.C. § 2255 ("Emergency Mot.") (to the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"); ECF No. 46; the Order by the D.C. Circuit, No. 16-30, ECF No. 45 (permitting Defendant's second or successive Section 2255 motion); Defendant's Supplemental Motion to Vacate under 28 U.S.C. § 2255 ("Def.'s Supp. Mot."), ECF No. 56; the United States' Opposition to Defendant's Motion to Vacate ("Govt. Opp'n"), ECF No. 63; Defendant's Reply Memorandum in support of Supplemental Motion ("Def.'s Reply"), ECF No. 66; Defendant's [First] Supplement to Reply Memorandum ("First Supp."), ECF No. 67; Defendant's Second Supplement to Reply Memorandum ("Second Supp."), ECF No. 68; Defendant's Notice of Supplemental Authority ("Def.'s Notice"), ECF No. 69; Defendant's Third Supplement to Reply Memorandum ("Third Supp."), ECF No. 70; the United States' Supplemental Brief in Response to the Court's Order of July 20, 2021 ("Govt. Supp. Brief"), ECF No. 73; Defendant's Response to Government's Supplemental Brief ("Def.'s Response"), ECF No. 74; Defendant's Supplement to Response to Government's Supplemental Brief ("Def.'s Response Supp."), ECF No. 75; and the entire record in this case.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCrR 47(f).

## I. BACKGROUND

Defendant was indicted initially on one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a). Indictment, ECF No. [7].  At that time, United States Sentencing Guideline ("U.S.S.G.") § 4B1.1(a) provided a sentencing enhancement for a person classified as a Career Offender, meaning a person who was at least eighteen years old at the time of his instant offense, whose present conviction was one for a "crime of violence" or a "controlled substance offense," and who had two prior felony convictions for those type of offenses.[2]  The Court notes that at the time of Mr. Sumner's sentencing the U.S.S.G. were mandatory and binding on all judges.  *See United States v. Booker*, 543 U.S. 220, 233 (2005).  Additionally, the "three strikes" provision of 18 U.S.C. § 3559(c) required that a defendant convicted of a "serious violent felony" be sentenced to life imprisonment if they had at least two previous convictions for "serious violent felonies."[3]

---

[2] A "crime of violence" was defined as follows:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that - -

> (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson or extortion, involves the use of explosives, or *otherwise involves conduct that presents a potential risk of physical injury to another.*

U.S.S.G. § 4B1.2 (2000) (emphasis added to highlight the "residual clause").  Subsection (1) is generally referred to as the "elements" clause and the non-italicized part of subsection (2) is the "enumerated offenses" clause.

[3] A "serious violent felony" was defined as follows:

(i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder . . .; manslaughter . . .; assault with intent to commit murder . . .; assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in section 2244(a)(1) and (a)(2)); kidnapping; aircraft piracy . . . ; robbery (as described in section 2111, 2113, or 2118); carjacking. . .; extortion; arson; firearms use; firearms possession . . .; or attempt, conspiracy, or solicitation to commit any

2

At the time of his indictment for attempted federal bank robbery, Mr. Sumner had been convicted of multiple prior offenses. Defendant has a 1991 Pennsylvania conviction for robbery and a 1986 Pennsylvania conviction for rape, involuntary deviate sexual intercourse, and robbery. Def.'s Supp. Mot., ECF No. 56, at 5.

Following negotiations with the Government, Mr. Sumner decided to plead guilty by information to attempted armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). *See* Plea Agreement, ECF No. [21]. At the time of his plea, Mr. Sumner was represented by a federal public defender. In exchange for Defendant's plea, the Government agreed to forgo further criminal charges and to withdraw its notice of mandatory life imprisonment pursuant to the "three strikes" provision of 18 U.S.C. § 3559(c)(4). *Id.* The parties agreed that twenty-five years was an appropriate sentence and would become binding upon acceptance by this Court, pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure. *Id.*

On the same day the plea agreement was signed, this Court held a guilty plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. At the hearing, the Court questioned Defendant and the Government regarding the specific details of the plea agreement and the factual proffer, and Mr. Sumner—who was sworn and answered under oath—indicated his understanding and acceptance of both the agreement and the facts underlying the charge against

---

of the above offenses; and

(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, *by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[.]*

18 U.S.C. §3559(c)(2)(F) (emphasis added to highlight the "residual clause"). Subparagraph (i) is referred to as the "enumerated offenses" clause and subparagraph (ii) (non-italicized) is referred to as the "elements" clause.

him.  *See generally* Transcript ("Tr.") of May 3, 2001 Plea Hearing, ECF No. 31.  On September 4, 2001, the Court sentenced Defendant to twenty-five years of imprisonment to be followed by five years of supervised release.  *See* Tr. of Sentencing Hearing, ECF No. 25, at 8.  Mr. Sumner did not file a direct appeal from his conviction or his sentence.

On July 24, 2002, Defendant filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, which this Court denied.  Mem. Op., ECF No. [32]; Order, ECF No. [33]. On April 25, 2005, Petitioner filed an Application for Certificate of Appealability which this Court also denied.  Mem. Op., ECF No. [38]; Order, ECF No. [39].  Defendant moves again for relief pursuant to Section 2255, now relying on *Johnson v. United States*, ---U.S.---, 135 S. Ct. 2551 (2015) , which held unconstitutionally vague the "residual clause" found in the definition of the term "violent felony" in the Armed Career Criminal Act (ACCA).  *See id.* at 2557 ("[T]he indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges[.]" )  Defendant asserts that the residual clause addressed in *Johnson* is "identical to the mandatory [Sentencing] Guidelines' residual clause and materially indistinguishable from § 3559(c)'s residual clause[.]"  Def.'s Supp. Mot., ECF No. 56, at 3.

Putting the *Johnson* decision in context, this Court notes first that, in January 2005, the Supreme Court of the United States "severed  and excised" 18 U.S.C. § 3553(b)(1) - the provision that made the Guidelines mandatory - with the result that the Guidelines were made "effectively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005).  On June 26, 2015, the Supreme Court in *Johnson v. United States* held that the residual clause of the Armed Career Criminal Act, § 924(e)(2)(B)(ii), is unconstitutionally vague. *Id.* at 2563.  Then, on April 18, 2016, the Supreme Court held in *Welch v. United States*, -- U.S. --, 136 S. Ct. 1257 (2016), that its decision in *Johnson*

announced a substantive rule that has a retroactive effect in cases on collateral review. *Id.* at 1268.[4]

In *United States v. Sheffield*, the Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") extended the reasoning of *Johnson* to the United States Sentencing Guidelines ("U.S.S.G."), finding that the similarly worded residual clause of U.S.S.G. § 4B1.2(b) is also unconstitutional under the void-for-vagueness doctrine. *Sheffield*, 832 F.3d 296, 312-13 (D.C. Cir. 2016). In *Beckles v. United States*, -- U.S. --, 137 S. Ct. 886 (2017), however, the Supreme Court held that the residual clause of U.S.S.G. § 4B1.2(a)(2) is not void for vagueness. *Id.* at 890. More specifically, the Supreme Court held that because "the advisory Guidelines . . . merely guide the exercise of a court's discretion," the Court held they "are not subject to a vagueness challenge under the Due Process Clause." *Id.* at 892.

Although *Beckles* overruled *Sheffield* for advisory guidelines cases, the Supreme Court in *Beckles* noted that its holding did not render the Sentencing Guidelines immune from constitutional scrutiny, including scrutiny under the due process clause. *Id.* at 895-96. Rather, the majority opinion of the Supreme Court held specifically that the void-for-vagueness doctrine was inapplicable to the advisory Sentencing Guidelines. *Beckles*, 137 S. Ct. at 896. The Supreme Court explained: "Unlike the ACCA, . . . the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing

---

[4] On June 2, 2016, the Honorable Beryl A. Howell, Chief Judge of the United States District Court for the District of Columbia issued a Standing Order "appoint[ing] the Office of the Federal Public Defender for the District of Columbia to represent any defendant previously determined to have been entitled to appointment of counsel, or who is now indigent, to determine whether that defendant may qualify to seek to vacate a conviction or to seek a reduction of sentence or to present any motions to vacate a conviction and/or for reduction of sentence in accordance with *Johnson* and *Welch*." June 2, 2016 Standing Order. Pursuant to the procedures set out in that Standing Order, Mr. Sumner, through counsel, filed with the D.C. Circuit his [46] Emergency Motion for Authorization to File a Second or Successive Motion Under 28 U.S.C. § 2255.

an appropriate sentence within the statutory range.  *Id.* at 892.[5]

Subsequently, in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (U.S. 2018), the Supreme Court applied the reasoning in *Johnson* to 18 U.S.C. § 16(b) and declared the residual clause therein void for vagueness.  In *United States v. Eshetu*, on a panel rehearing, the D.C. Circuit applied the reasoning from *Johnson and Dimaya* to vacate in part the decision in *United States v. Eshetu*, 863 F.3d 946 (D.C. Cir. 2017) and hold that the nearly identical residual clause in 18 U.S.C. § 924(c)(3)(B) is void for vagueness.  *Eshetu*, 898 F.3d 36, 38 (D.C. Cir. 2018); *see also United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (reaching the same result, *i.e.,* that the residual clause in 18 U.S.C. § 924(c)(3)(B) is void for vagueness).

In light of these holdings, Mr. Sumner argues that he never should have qualified for enhanced sentencing under U.S.S.G. § 4B1.1 ("Career Offender Guideline") or 18 U.S.C. § 3559 because the residual clauses in the Career Offender Guideline and Section 3559 are similar or identical to the residual clause of Armed Career Criminal Act that was declared unconstitutionally vague in *Johnson*.  Def.'s Supp. Mot., ECF No. 56, at 1, 3. With these residual clauses void for vagueness, Defendant argues that his predicate offenses of federal attempted armed bank robbery [the instant case] and his Pennsylvania charges of rape, involuntary deviate sexual intercourse, and robbery do not qualify as "crimes of violence" triggering the Career Offender Guideline because these offenses "do not meet a constitutional definition under the remaining enumerated or elements clauses" of those statutes.  *Id.* at 4.  Employing the same logic, Mr. Sumner argues that his prior Pennsylvania offenses do not qualify as "serious violent felonies" triggering § 3559.  *Id.*

---

[5] In *Beckles*, the Supreme Court emphasized the distinction between the advisory nature of the Guidelines today and the mandatory nature of the Guidelines pre-*Booker*.  While the Guidelines "were initially binding on district courts," the decision in "*Booker* rendered them 'effectively advisory.'" 137 S. Ct. at 894 (quoting *Booker*, 543 U.S at 245). The Guidelines are now just "one of the sentencing factors" courts are required to consider. *Id.* at 893 (citing 18 U.S.C. § 3553(a)).

Defendant asserts that his willingness to sign a plea deal for federal attempted armed bank robbery was "driven by the parties' and the Court's understanding that, but for the negotiated plea, [he] would have been subject to the enhanced sentences called for by the mandatory Career Offender Guideline and § 3559(c)." *Id.* at 5.  Mr. Sumner maintains that the sentence which resulted from this plea deal was imposed in violation of the Constitution because it was based on a faulty understanding of the applicability of the Guidelines and § 3559.  *Id.*

The Government opposed Defendant's motion "for at least seven reasons," Govt. Opp'n, ECF No. 63, at 3,  two of which have since been withdrawn.  Govt. Supp. Brief, ECF No. 73, at 2 (withdrawing its claims that Defendant's § 2255 motion is untimely under 2255(f) and that the elements clause of 18 U.S.C. § 3559(c)(2)(F)(ii) is not void for vagueness). The remainder of the Government's opposition will be addressed by this Court herein.  On July 20, 2021, the Court issued a Minute Order directing the parties to submit supplemental briefing specifically addressing "whether defendant's instant and prior convictions constitute 'crimes of violence' or 'serious violent felonies' under the enumerated-offense or elements clause of the applicable sentencing guidelines and Section 3559."  July 20, 2021 Minute Order.   Accordingly, all supplemental briefing has been completed, and Defendant's [56] Supplemental Motion to Vacate Judgment  is now ripe for resolution.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence" if the prisoner believes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the

opportunities prisoners have to raise most of their objections during trial or on direct appeal." *United States v. Burwell*, 160 F. Supp. 3d 301, 308 (D.D.C. 2016) (Kollar-Kotelly, J.)

In order "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Nonetheless, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).

### III. DISCUSSION

In its Opposition, ECF No. 63, at 3, the Government set forth seven grounds for its position that this Court should "summarily deny defendant's motion," as follows: (1) Defendant has not "obtained the required authorization from the D.C. Circuit to assert a second or successive § 2255 motion challenging his sentence based on § 3559, and hence this Court lacks jurisdiction" over that claim; (2) Defendant's "guilty plea forecloses the claims he now submits" and "renders his claims procedurally defaulted;" (3) Defendant's motion is "untimely under 28 U.S.C. § 2255(f);" (4) *Johnson* may not be extended retroactively to Defendant's case "with respect to his career-offender arguments;" (5) the mandatory guidelines are not subject to a "vagueness challenge;" (6) § 3559 is "not vague;" and (7) Defendant was "properly subject to a career-offender designation and to § 3559's enhanced penalties." Govt. Opp'n, ECF No. 63, at 3.  As previously noted herein, the grounds numbered (3) and (6) above have been withdrawn. The Government's remaining arguments will be addressed below.

### A.  <u>Required Authorization</u>

Before a court may review a Section 2255 motion filed by a defendant who has previously filed such a motion, the "appropriate court of appeals" must certify that the second or successive motion "contain[s]" three prerequisites: (1) "a new rule of constitutional law," (2) "made retroactive to cases on collateral review by the Supreme Court," (3) "that was previously unavailable."  28 U.S.C. § 2255(h)(2); *Tyler v. Cain*, 533 U.S. 656, 662 (2001).   Under § 2244, as incorporated into §2255(h), a court of appeals certifies the motion if it makes "a *prima facie* showing" that it contains these three prerequisites.  28 U.S.C. § 2244(b)(3)(C);  *see In re Williams*, 759 F.3d 66, 69-70 (D.C. Cir. 2014) ("[T]he motion must make a *prima facie* showing that it contains a previously unavailable rule of constitutional law made retroactive on collateral review by the Supreme Court").  With regard to certified claims, Section 2244(b)(4) requires the district court to "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."  28 U.S.C. § 2244(b)(4).

Defendant notes that the D.C. Circuit has not addressed "whether the district court must also consider whether the motion meets the § 2255(h) standard."  Def.'s Supp. Mot., ECF No. 56, at 10 & n. 4 (noting varying views among circuit courts); *see United States v. Charles Booker*, 240 F. Supp. 3d 164, at 169 (2017) (holding that because the D.C. Circuit had authorized the filing of a second or successive motion under Section 2255, "[t]he Court therefore may review [the petitioner's] motion on the merits"); *but see United States v. Carter*, 422 F. Supp. 3d 299, 312 (D.D.C. 2019) ("courts to date have generally accepted the [ ] view that a defendant proceeding on a second or successive § 2255 motion in the district court must "show" that the motion satisfies the requirements of (h)(2), beyond the prima facie showing required for certification"); *see also*

*United States v. Hammond*, 351 F. Supp. 3d 106, 121 (D.D.C. 2018) ("Despite [ ] certification, [a defendant] has not cleared § 2255(h)(2)'s gatekeeping function . . . Section 2244(b)(4) calls for a more incisive inquiry than the court of appeals performs at the certification stage.")

In *Carter*, the Honorable Ellen Segal Huvelle concluded that "[a]bsent any contrary authority, the Court will assume that defendant must meet this higher standard [of gatekeeping] to stave off dismissal." 422 F. Supp. 3d at 312. In that case, the court noted that the decision in *In re Williams* "made clear that the gatekeeping function performed by subsection (h)(2) should not cross over into evaluating whether a new rule applies in a particular case." *Id.* at 313. The court explained that:

> Even through the Court in *In re Williams* was only assessing whether the defendant has made a *prima facie* showing that his claim satisfied the requirements for bringing a second or successive motion, the difference between its test and the standard the district court applies is only a matter of degree, not substance. In other words, if the Court of Appeals is not supposed to consider whether a new rule applies to a particular set of circumstances when it is deciding whether to certify a claim, it follows neither should the district court.

*Carter*, *id.*

The court ultimately concluded that the defendant's "career offender claim satisfie[d] the requirements in § 2255(h)(2) and § 2244 (b)(4) that it contain a "new rule of constitutional law, made retroactive by the Supreme Court to cases on collateral review." *Id.* Similarly, this Court finds that Mr. Sumner's career offender claim satisfies these same statutory requirements that it contain a new rule of constitutional law [*Johnson*] made retroactive by the Supreme Court [*Welch*] to cases on collateral review. Assuming that Mr. Sumner clears any procedural hurdles, the district court will engage then in an analysis of whether the Supreme Court decisions in *Johnson* and *Welch* require retroactive invalidation of the residual clause in the mandatory Career Offender Guideline.

With respect to Defendant's challenge involving 18 U.S.C. § 3559, the Government points

out that when Mr. Sumner filed his Emergency Motion seeking leave to file a second or successive Section 2255 petition, he "sought leave to raise [only] a single claim: a challenge to his career offender sentence under U.S.S.G. § 4B1.1 based on *Johnson*." Govt. Opp'n, ECF No. 63, at 12; *see* Emergency Motion, ECF No. 46, at 1 ("Mr. Sumner makes this request on an emergency basis so that he may assert a timely challenge to his career offender sentence under U.S.S.G. § 4B1.1 based on *Johnson*, . . . ")  Defendant "made no claim regarding the application of *Johnson* to a different — and differently worded statute — 18 U.S.C. § 3559[,]" that "operates independently of the mandatory or advisory guidelines."   Govt. Opp'n, ECF No. 63 at 12-13.  The Government argues that Defendant "cannot now assert a new claim beyond the scope of the D.C. Circuit's authorization" which leaves this Court without jurisdiction over Defendant's Section 3559 challenge.  *Id.* at 13; *see United States v. Mathis*, 660 F. Supp. 2d 27, 29 (D.D.C. 2009) (A district court lacks "jurisdiction over a defendant's 'second or successive' motion under § 2255 unless the appropriate court of appeals certifies the filing of the motion") (quoting *Williams v. Gonzales*, 567 F. Supp. 2d 148, 149 (D.D.C. 2008)); *see also United States v. Akers*, 519 F. Supp. 2d 94, 96 (D.D.C. 2007) (same); 28 U.S.C. §§ 2244(b)(3)(A), 2255(h).

Defendant contends however that whether or not Mr. Sumner challenged initially only the Career Offender Guideline provision is "immaterial," as "the D.C. Circuit regards the question of whether the Supreme Court decision applies to the defendant's specific circumstances to be a merits question left to the district court in the first instance."  Def.'s Reply, ECF No. 66, at 1-2. Defendant's contention would have this Court make a merits determination on any challenges raised during the certification process as well as any added subsequently, which would effectively bypass any certification requirement for the added challenges.  Defendant looks to *In re Williams*, 759 F.3d 66, 72 (D.C. Cir. 2014), where the defendant therein –a juvenile during part of the earlier

period of criminal activity – was sentenced to life without parole on charges of conspiring to participate in a racketeer influenced corrupt organization and to distribute illegal drugs.  *Id.* at 67.  The *Williams* defendant challenged his life sentence without parole, for a juvenile, based on two Supreme Court cases that related to this issue: one addressing life without parole sentences for juveniles and the other addressing mandatory life without parole sentences for juvenile offenders.  *Id.* at 71-72.  In that case, the D.C. Circuit certified <u>both</u> claims, which were raised by the defendant in <u>two successive Section 2255 motions</u>, but the D.C. Circuit left it for the district court to determine the merits of the motions.   *Id.* at 72 (emphasis added).  Accordingly, this Court does not find *In re Williams* instructive on whether the certification by the Court of Appeals in the instant case may be extended to encompass the Section 3559 claim (involving the possibility of a life sentence) that was not presented to the Court of Appeals, and which operates separate and apart from the Career Offender Guideline claim that was certified.

Defendant relies further on *Haynes v. United States*, 237 F. Supp. 3d 816 (C.D. Ill. 2017), asserting that, in that case, although a "challenge to 18 U.S.C. Section 924(c) under *Johnson* was not included in petitioner's successive Section 2255 petition for authorization, 'it [was] clearly predicated on *Johnson* and thus the Court believe[d] it [was] based upon a new rule of constitutional law and well within the scope of the claims the Seventh Circuit authorized this Court to reach.'"  Def.'s Supp. Mot., ECF No. 56 (citing *Haynes*, 237 F. Supp. 3d at 821).  The Government contends however that Defendant's reliance on *Haynes* is misplaced because in that case, the defendant was granted leave by the appellate court to "challenge [both] his sentence under § 3559 and his § 924(c) convictions under *Johnson v. United States*[.]"  Govt. Opp'n, ECF No. 63, at 13 (citation omitted).  More specifically, the Seventh Circuit's authorization permitted defendant Haynes to challenge his robbery "convictions under 18 U.S.C. § 1952" and to assert that *Johnson*

made them "improper predicates for a Section 924(c) conviction." Govt. Opp'n, ECF No. 63, at 14 n.4.   The issue in dispute was that the district court permitted defendant to assert later that additional robberies, charged under § 1951, were "improper predicates under the same theory," *id.*,  even though the government argued that the Seventh Circuit had not certified that defendant had made any prima facie showing as to § 1951. *Haynes v. United States*, 237 F. Supp. 3d at 821. The district court held that defendant's claim that his robbery convictions under § 1951 did not qualify as predicate crimes of violence was "clearly predicated upon *Johnson*," and therefore was "based upon a new rule of constitutional law," and was "well within the scope of claims the Seventh Circuit authorized this Court to reach." *Haynes*, 237 F. Supp. 3d at 821. The Government concludes and this Court agrees that the *Haynes* case involved a limited amendment of the defendant's 2255 motion: "it did not allow him to add an entirely new claim for relief or assert a previously unannounced constitutional challenge to a federal criminal statute." Govt. Opp'n, ECF No. 53, at 14.

In the instant case, Mr. Sumner - who was represented by counsel - did not identify any Section 3559(c) challenge in his Emergency Motion, while he did assert a challenge pursuant to the Career Offender Guideline. *See* Def.'s Emergency Motion, ECF No. 46, at 6 (discussing only a challenge based on the Career Offender Guideline); *see also* D.C. Circuit Order, ECF No. 45 (noting that "Petitioner alleges his sentence as a career offender . . .  was based on the residual clause in U.S.S.G. 4B1.2(a)(2), which is identical to the residual clause held unconstitutionally vague in *Johnson v. United* States, 135 S. Ct. 2551 (2015)"). The D.C. Circuit certified Defendant's successive 2255 motion based on his challenge to the Career Offender Guideline because Mr. Sumner "made a prima facie showing" that he relied on *Johnson*. *Id.* While Mr. Sumner claims reliance on *Johnson* as the basis for his Section 3559(c) challenge, this assertion

was not presented to the D.C. Circuit for authorization, and therefore, the Court finds that Defendant's Section 3559(c) claim has not been certified by the D.C. Circuit, and this Court lacks jurisdiction over that claim. Accordingly, this Court will address herein only Defendant's challenges presented with regard to the Career Offender Guideline.

### B. **Defendant's Guilty Plea**

The Government asserts that Defendant challenges the mandatory sentencing guidelines (and 18 U.S.C. Section 3559) "despite the fact that he was not sentenced under either one." Govt. Opp'n, ECF No. 63, at 14. Defendant argues that because his sentence was "based on" both provisions, he may challenge those provisions. Def.'s Supp. Mot., ECF No. 56, at 13. "[Defendant's] plea agreement expressly cited to the withdrawal of the § 3559(c) papers as a reason for both the plea and the agreed-upon sentence," and Defendant was sentenced above the Career Offender Guideline range because of "the belief that Mr. Sumner was subject to a life sentence under § 3559." *Id.* at 13-14; *see* Plea Agreement, ECF No. 21, at ¶ 3 (indicating that the Government agrees to withdraw its Notice of Mandatory Life Imprisonment Upon Conviction); Judgment, ECF No. 24 (noting that the sentence departed from the Guidelines range, and he was sentenced to the statutory maximum because "[a]s part of the plea, life papers were withdrawn").[6]

---

[6] Defendant cites cases where the defendants entered into plea agreements but were allowed to bring Section 2255 motions pursuant to *Johnson* to challenge their sentences that were "based on" the applicability of the Armed Career Criminal Act ("ACCA"). Def.'s Supp. Mot., ECF No. 56, at 14; *see United States v. Pam*, 867 F.3d 1191, 1195 (10th Cir. 2017) (permitting a Section 2255 motion where defendant pleaded guilty to a Section 922(g) violation and received a 15-year ACCA-enhanced sentence, which "exceeds the ten-year statutory maximum  that is generally applicable); *United States v. Wolf*, Criminal No. 04-cr-347-1, 2017 WL 736809, at *7 (M.D. Pa. Feb. 24, 2017) (ruling that "we will not uphold Defendant's now-unconstitutional sentence in light of his plea agreement, as doing so would result in a miscarriage of justice by sustaining what has proven to be an unlawful application of the ACCA"). The Government argues that Mr. Sumner was "not sentenced under the ACCA" nor was his sentence "unconstitutional." Govt. Opp'n, ECF No. 63, at 17 n. 5.

The Government argues that it is "well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."  Govt. Opp'n, ECF No. 63, at 15 (string citing cases).  Accordingly, the Government concludes that because Mr. Sumner entered a plea of guilty and accepted the benefits of the plea agreement, he may not now raise a *Johnson* claim by collateral attack pursuant to a Section 2255 motion.  *Id.; see Davila v. United States*, 843 F.3d 729, 733 (7th Cir. 2016) (negotiated plea agreement "forecloses collateral attack based on *Johnson* or any other development that does not concern subject-matter jurisdiction or imply that the very institution of the criminal charge violated the Constitution").  Furthermore, the Government asserts that Defendant does not and may not claim that his sentence was unlawful as "he was sentenced within the applicable statutory range."  Govt. Opp'n, ECF No. 63, at 16.  The Government concludes that the finality of Mr. Sumner's plea "forbids" him from 'obtain[ing] a windfall while retaining the benefits of his negotiated plea."  *Id.* at 17.

Defendant responds however that Mr. Sumner's plea agreement does not contain any waiver of his right to pursue a Section 2255 collateral attack on his sentence, *see* Plea Agreement, ECF No 21, nor did the plea colloquy cited by the Government address this right of collateral attack.  *See* Govt. Opp'n, ECF No. 63, at 16 (citing plea hearing transcript, ECF No. 31, at 20:01-04 and 20:14-23). Mr. Sumner argues that his sentence is unconstitutional under *Johnson*, and therefore illegal, with the effect that a waiver would not bar collateral attack (nor could Defendant waive rights based on a case decided after his sentencing). Def.'s Reply, ECF No. 66, at 6; *see United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) ( "A sentence is illegal if it exceeds the permissible statutory penalty for the crime or violates the Constitution.") (citation omitted); *United States v. Torres*, 828 F.3d 1113, 1124-25 (9th Cir. 2016) (holding that if the district court sentenced

Torres pursuant to an unconstitutionally vague Guideline, that "render[ed] Torres's sentence illegal and therefore the waiver in his plea agreement [did] not bar [his] appeal") (internal quotation marks and citation omitted); *United States v. Tomisser*, 196 F. Supp. 3d 1169, 1175 (E.D. Wa. 2016) ("because Defendant's sentence "violates the constitution" the Court will not enforce the collateral attack waiver"); *see also Cross v. United States*, 892 F.3d 288, 298-299 (7th Cir. 2018) (finding that one of the defendants was not barred by the waiver clause in his plea agreement from bringing a Section 2255 motion). In *Cross*, the waiver specifically permitted motions "based on . . . the sentencing court's reliance on any constitutionally impermissible factor." *Id.* at 292. That court looked at the plea agreement with the view that "a valid appeal waiver must speak in express and unambiguous terms," *id.* at 298, and the court found that a "reasonable interpretation" of the waiver exception would include "any unconstitutional input in sentencing." *Cross, id.* at 299. (internal citations and quotation marks omitted).

Furthermore, Mr. Sumner argues that enforcing a waiver in a case where there is a *Johnson* challenge would be a "miscarriage of justice," and therefore any waiver should not be enforced. Def.'s Reply, ECF No. 66, at 8-9; *see, e.g., United States v. Brown*, 316 F.3d 1151, 1161 (10th Cir. 2003) (reviewing circuit court decisions finding errors affecting fundamental fairness when "the correct application of sentencing laws would likely significantly reduce the length of the sentence"); *Jordan v. United States*, Case No. 15-cv-2294, 2017 WL 4035722, at *3 (C.D. Ill Sept. 13, 2017) (holding that collateral attack waiver does not bar *Johnson*-based § 2255 motions because "[t]he Due Process Clause demands" that principles of fundamental fairness and legitimacy "should [] allow for challenges to vague sentencing guidelines that have the ability to dramatically increase a defendant's imprisonment guideline range").

This Court agrees with Defendant that a reasonable interpretation of the plea agreement is

that Mr. Sumner may collaterally attack his sentence as unconstitutional. Paragraph 5 of Mr. Sumner's plea agreement, which discusses his appeal waiver, is silent regarding his right to file a collateral attack; it includes no express and unambiguous terms restricting such an attack. *See* Plea Agreement, ECF No. 21, at 2; *see Carter*, 422 F. Supp. 3d at 309 ("[I]n construing a plea agreement, a court cannot 'bar the door . . . if [the defendant's] waiver only arguably or ambiguously forecloses his claims.'") (quoting *United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016)). Furthermore, at sentencing, this Court informed Mr. Sumner that he could appeal if his sentence was "contrary to the law or illegal." Defendant's Sentencing Transcript, ECF No. 31, at 20:14-23.

Additionally, the cases cited by Defendant support Mr. Sumner's allegation that his sentence is contrary to law or illegal. "[M]isapplication of the mandatory career-offender Guideline[] . . . results in a sentence substantively not authorized by law." *United States v. Doe*, 810 F. 3d 132, 160 (3d Cir. 2015); *see Narvaez v. United States*, 674 F.3d 621, 630 (7th Cir. 2011) (holding the erroneous mandatory Career Offender designation "illegally increased" the petitioner's sentence "approximately five years beyond that authorized by the sentencing scheme"); *see also Hill v. Masters*, 836 F.3d 591, 599 (6th Cir. 2016) (finding that a "sentence imposed under mandatory guidelines (subsequently lowered by Supreme Court precedent)" and a "sentence imposed above the statutory maximum" are both "beyond what is called for by law"). Accordingly, in light of the language of Defendant's plea agreement and case law supporting challenges to the Career Offender Guideline, the Government's argument that Defendant's plea agreement prohibits him from challenging his Career Offender designation is denied.

## C. Procedural Default

The Government argues that Mr. Sumner's "plea agreement also renders his current claims

procedurally defaulted." Govt. Opp'n, ECF No. 63, at 17.  "Because he did not appeal – and waived

that right by his guilty plea — defendant did not preserve any vagueness challenge to the

mandatory Guidelines or § 3559, and the procedural default rule 'generally precludes consideration

of an argument made on collateral review that was not made on direct appeal, unless the defendant

shows cause and prejudice.'"  *Id.* (quoting *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir.

2008)); *see also United States v. Lane*, 267 F.3d 715, 721 (7th Cir. 2001)  ("[W]aiving or foregoing

a direct appeal bars collateral attack on the basis of most issues, even many constitutional issues,

that could have been raised on direct appeal.")  "The procedural default rule is neither a statutory

nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial

resources and to respect the law's important interest in the finality of judgments."  *Massaro v.

United States*, 538 U.S. 500, 504 (2003).

   Here, it is undisputed that Mr. Sumner did not previously raise his challenge to the

mandatory Guidelines (or his Section 3559 claim).  However, Mr. Sumner asserts that procedural

default is inapplicable because this doctrine "does not apply to sentence-specific challenges" and

even if it did "Mr. Sumner shows cause and prejudice excusing the default."  Def.'s Reply, ECF

No. 66, at 9; *see Bousley  v. United States*, 523 U.S. 614, 622 (1998) (finding that a defendant is

procedurally barred from raising a claim in a subsequent collateral attack unless he shows cause

for his failure to do so and prejudice as a result of his failure). Cause for default exists where "a

constitutional claim is so novel that its legal basis is not reasonably available to counsel . . . " *Reed

v. Ross*, 468 U.S. 1, 16 (1984).  Novelty relies upon circumstances where the Supreme Court: (1)

explicitly overrules its own precedent; (2) changes course on a "longstanding and widespread

practice to which [the Court] has not spoken, but which a near-unanimous body of lower court

authority has expressly approved"; or (3) disapproves of a once-sanctioned practice.  *Id.* at 17

(quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)).   To demonstrate prejudice, a petitioner "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'"   *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998))(emphasis and alternations in original).

Mr. Sumner's "sentence-specific challenges" argument relies upon principles that have informed procedural default such as judicial economy and finality and argues that these are insufficient reasons to avoid reopening a sentence.  *See* Def.'s Reply, ECF No. 66, at 10 ("The rule should not be applied here because Mr. Sumner does not seek to overturn his conviction, but instead seeks only to correct his sentence — an endeavor that implicates fewer resources than a full review and much less concern with finality than a challenge to a conviction."); *see also United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994)) ("When an error at sentencing is at issue, however, the problem of finality is lessened, for a resentencing is nowhere near as costly or chancy an event as a trial."). Resolving Mr. Sumner's "sentence-specific challenges" argument is unnecessary because this Court finds that the cause and prejudice standard has been met, as discussed below.

To establish cause, a defendant must demonstrate "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim," *McCleskey v. Zant*, 499 U.S. 467, 493 (1991), and in addition, defendant must show "'actual prejudice' resulting from the errors of which [he] complains." *United States v. Frady*, 456 U.S. at 168.  Turning first to the issue of cause, the Supreme Court explained that "'futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 130 n.35 (1982)).  However, "a claim that 'is so novel that its legal basis

is not reasonably available to counsel' may constitute cause for a procedural default.'" *Id.* at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).  In this case, the novelty of Defendant's claim cannot be denied as the D.C. Circuit noted that, "it is fair to say that no one—the government, the judge, or [the defendant]—could reasonably have anticipated *Johnson*." *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016).  Thus, "[u]ntil the Supreme Court announced its new rule in *Johnson*, [defendant] did not have a reasonable basis upon which to challenge the constitutionality of [the Guidelines'] residual clause." *United States v. Charles Booker*, 240 F. Supp. 3d 164, 170 (D.D.C. 2017); *United States v. Brown*, 249 F. Supp. 3d 287, 292-93 (D.D.C. 2017) (same).  Moreover, the Supreme Court has unequivocally announced that the rule in *Johnson* is applicable retroactively on collateral review.

Turning next to the issue of prejudice, the D.C. Circuit has recognized that a defendant bringing a claim under § 2255 suffers prejudice when, in light of new case law, he "would have been sentenced to prison for . . . less than the sentence imposed." *United States v. McKie*, 73 F.3d 1149, 1154 (D.C. Cir. 1996); *accord Brown*, 249 F. Supp. 3d at 293 ("The possibility that Mr. Brown's sentence will be reduced by at least five years . . . establishes prejudice"); *Charles Booker*, 240 F. Supp. 3d at 170 (same).  Here, Mr. Sumner asserts that his "25-year sentence would have been between 19 and 21 years less without the mandatory Guidelines' and § 3559(c)'s residual clauses."  Def.'s Reply, ECF No. 66, at 16 (emphasis omitted).  The Government contends however that at the time Mr. Sumner entered a guilty plea, "defendant was aware that he could have contested the appropriateness of his potential sentencing as a career offender or under § 3559."  Govt. Opp'n, ECF No. 63, at 18, citing Transcript of Plea Hearing, ECF No. 31, at 9:04-09 (where counsel stated that if there had been a trial, the court or jury would have to "make a finding that this particular robbery that he is on trial for before the court was still a qualifying

offense"). The Court finds that the Government's contention is without merit because, as previously noted herein, the constitutional right *Johnson* vindicated was unforeseeable.

This Court finds that Mr. Sumner has sufficiently demonstrated that he was prejudiced by being subject to application of the Career Offender Guideline. This is sufficient to establish prejudice for the purposes of the procedural default rule, although a determination on actual prejudice requires a review of the merits of his claims. With regard to the Government's argument that Mr. Sumner procedurally defaulted his claims, this Court agrees with other judges from this Circuit who have rejected the procedural hurdles that the Government asserts impede Mr. Sumner from obtaining relief. *See, e.g., United States v. Navarro Hammond*, 351 F. Supp. 3d at 123-124 (rejecting procedural default argument for post-*Johnson* § 2255 motion); *Carter*, 422 F. Supp. 3d at 309-311 (same); *United States v. West*, 314 F. Supp. 3d 223, 229 n.4 (D.D.C. 2018) (same); *United States v. Brown,* 249 F. Supp. 3d 287, 293 (D.D.C. 2017) (same).[7] Accordingly, the Court turns next to the Government's arguments that *Johnson* may not be extended to the Career Offender Guideline nor is the Guideline subject to a vagueness challenge.

### D. Extension of *Johnson* to encompass a "Vagueness" Challenge to the Residual Clause in the Career Offender Guideline

The Court considers these two arguments together as they overlap.

### 1. Applicable Legal Standard

Under normal circumstances, a §2255 motion may be granted "[i]f the court finds that . . . the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the person to render the

---

[7] Furthermore, in *Navarro Hammond*, 351 F. Supp. 3d at 129 n.13, the court found that a defendant need not show that the district court actually relied on the residual clause to proceed.

judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).  In the instant case, Mr. Sumner's claim for relief relies upon whether striking his sentence would enforce the right in *Johnson* or would require a new right; this is because he claims the benefit of a right [pursuant to *Johnson*] that has been "newly recognized" by the Supreme Court and made "retroactively applicable to cases on collateral review."  *Dodd v. United States*, 545 U.S. 353, 357-358 (2005).  The Supreme Court recognizes a "new right" for Section 2255 purposes when it announces a "new rule" within the meaning set out in *Teague v. Lane*, 489 U.S. 288 (1989).  Govt. Opp'n, ECF No. 63, at 30-32; Def. Reply, ECF No. 66, at 18 (both discussing *Teague*).  In *Teague*, the plurality opinion concluded that "new constitutional rules of criminal procedure" generally "will not be applicable to those cases which have become final before the new rules are announced."  489 U.S. at 310; *see Mackey v. United States,* 401 U.S. 667, 675-702 (1971) (Harlan, J., concurring in the judgment in part and dissenting in part); *see Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (wherein the full Supreme Court adopted this approach).

Two categories of new legal rules that are not subject to the retroactivity bar in *Teague* are "[n]ew *substantive* rules"  and "new watershed rules of criminal procedure" (such as the right-to-counsel rule).  *Welch*, *id.* (emphasis in original) (citations omitted).  "A rule is substantive rather than procedural if it alters the range of conduct or class of persons that the law punishes"  and "[t]his includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish."  *Schriro v. Summerlin,* 542 U.S. 348, 351-53 (2004); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 729 (2016) ("Substantive rules, then, set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose.")  "Procedural rules, in contrast, are designed to enhance the

accuracy of a conviction or sentence by regulating 'the *manner of determining* the defendant's culpability.'" *Montgomery*, 136 S. Ct . at 730 (emphasis in original) (quoting *Schriro*, 542 U.S. at 353).

### 2. Summary of Parties' Arguments

Mr. Sumner argues that the right he asserts is a straightforward application of *Johnson* insofar as "*Johnson* broke new ground with respect to the residual clause not only in the ACCA, but also in analogous contexts." Def.'s Reply, ECF No. 66, at 19; *see, e.g., Johnson*, 135 S. Ct. at 2559-2560 (citing four Guidelines cases to show that courts cannot "derive meaning from the residual clause"). Defendant acknowledges that while *Johnson's* rule does not extend to "the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*[,]'" *Welch*, 136 S. Ct. at 1262 (emphasis in original) (quoting *Johnson*, 135 S. Ct. at 2561), it has to extend to the residual clause in the mandatory Guidelines because of the identical-to-the-ACCA way in which they gauge the riskiness of conduct. Def.'s Reply, ECF No. 66, at 19. In his Reply, *id.*, Defendant argues that *Johnson's* failure to address other residual clauses is a "distinction without a difference," *Brown*, 868 F.3d at 310 (Gregory, C.J., dissenting), because applying *Johnson* to the mandatory Guidelines is "merely an application of the principle that governed [*Johnson*]." *Chaidez v. United States*, 568 U.S. 342, 347-348 (2013).

In contrast, the Government argues that *Johnson* is not retroactively applicable to Mr. Sumner's Guidelines claims because "invalidation of the mandatory Guidelines' residual clause as vague is a "new" constitutional rule, . . . [that] was not *dictated* by precedent existing at the time [his] conviction became final." Govt. Opp'n, ECF No. 63, at 32 (citing *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (citation and internal quotation marks omitted)).[8] "To the

---

[8] Furthermore, the Government argues that "misapplication of the Guidelines" resulting in

23

contrary, *Johnson* addressed the residual clause in ACCA and confined its discussion of that clause to that statute — not the mandatory guidelines and certainly not § 3559." Govt. Opp'n, ECF No. 63, at 21. The Court notes that the Government's proposition about *Johnson* addressing the ACCA is far from surprising as the constitutional question in *Johnson* appeared in the context of an ACCA case. But in *Johnson*, even where a dissenting opinion criticized the Court for striking the ACCA's residual clause where "there [were] scores of federal and state laws that employ similar standards," the majority did not respond by indicating that its decision was limited to the ACCA. *Johnson*, 135 S. Ct. at 2577 (Alito, J., dissenting)

The Government asserts that "the question of whether *Johnson* would apply to claims such as defendant's [and whether the Guidelines may be challenged as vague] is an open question." Govt. Opp'n, ECF No. 63, at 22; *see Beckles*, 137 S. Ct. at 903 n.4 ("The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker* . . . may mount vagueness attacks on their sentences.") (Sotomayor, J., concurring); see *also Raybon v. United States*, 867 F.3d 625, 629 (6th Cir. 2017) (whether [*Johnson*] applies to the mandatory guidelines . . . is an open question"). "[I]f the existence of a right remains an open question as a matter of Supreme Court precedent, then the Supreme Court has not "recognized" that right." *Brown*, 868 F. 3d at 301.

---

an incorrect calculation of Mr. Sumner's Guidelines range does not have the same consequences as in *Johnson*, where reliance on the residual clause under the ACCA – which elevated the defendant's sentence from a maximum of ten years to an illegal 15-year mandatory – was a substantive change. Govt. Opp'n, ECF No. 63, at 34. In contrast, Defendant asserts that "*Johnson* changed the "substantive reach" of the mandatory Career Offender Guideline by "altering the range of conduct [and] the class of persons that the [Guideline] punishes[.]" Def's Supp. Mot., ECF No. 56, at 25 (quoting *Welch*, 136 S. Ct. at 1265) (internal quotation and quotation marks omitted)).

Defendant argues however that the Government's interpretation of a footnote in Justice Sotomayor's concurrence in *Beckles* is misplaced because Justice Sotomayor "suggested only that the merits of such a challenge have not yet been decided" and furthermore, "the majority's decision in *Beckles* did not foreclose such a challenge." Def.'s Reply, ECF No. 66, at 23 (citing *Brown*, 868 F. 3d at 308 n.5 (Gregory, C.J., dissenting)). Defendant questions also the Government's reliance on *Brown*, noting that the court there "believed that it was "constrained . . . from extrapolating beyond the Supreme Court's holding [in *Johnson*] to apply what [it] view[ed] as its reasoning and principles to different facts under a different statute or sentencing regime." Def.'s Reply, ECF No. 66, at 22 (citing *Brown*, 868 F.3d at 299) (internal quotation marks omitted); *see Brown*, 868 F.3d at 310 (Gregory C.J., dissenting) (the "finding that a defendant sentenced under a nearly identical provision with nearly identical effects cannot assert the right newly recognized in *Johnson* [ ] unnecessarily tethers that right to the ACCA itself, when the right clearly stems from the due process protections that prohibit such sentencing schemes more generally[,]" and such a finding "divests *Johnson's* holding from the very principles on which it rests").

The Government relies upon several Eleventh Circuit cases for the proposition that the mandatory Guidelines are not subject to a vagueness challenge. Govt. Opp'n, ECF No. 63, at 37-38. First, in *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015), the Eleventh Circuit "adopted the rule that *Beckles* later confirmed — *i.e.*, that [t]he vagueness doctrine does not apply to advisory Guidelines." Govt. Opp'n, ECF No. 63, at 37 (citing *Matchett,* at 1193-1194). That ruling from *Matchett* was then extended to sentences imposed when the Guidelines were mandatory. Govt. Opp'n, ECF No. 63, at 37; *see In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016) ("[T]he logic and principles established in *Matchett* also govern our panel as to [defendant's] guidelines sentence when the Guidelines were mandatory [with the effect that] [t]he Guidelines —

whether mandatory or advisory —cannot be unconstitutionally vague . . . “); *see also In re Sapp*, 827 F.3d 1334, 1336 (11th Cir. 2016) (“In [*Griffin*], we held that our reasoning in *Matchett* applied with equal force to the residual clause of the career-offender Guideline in the context of the mandatory Guidelines.”)  The Government asserts that “*Johnson* addressed a vagueness challenge to the ACCA because it is a federal statute that alters the statutory sentencing range for a crime,” and vagueness challenges are limited to sentencing laws that “fix the permissible sentences for criminal offenses,” Govt. Opp'n, ECF No. 63, at 38 (citing *Beckles*, 137 S. Ct. at 892).  The Government distinguishes application of *Johnson* to the “crime of violence” residual clause in the Guidelines, on grounds that it “would establish only that defendant's Guidelines range had been incorrectly calculated, but it would not alter the statutory boundaries for sentencing set by Congress for the crime.”  Govt. Opp'n, ECF No. 63, at 38 (quoting *Griffin*, 823 F.3d at 1355).

Defendant insists however that the mandatory Career Offender Guideline “must be subject to a constitutional vagueness challenge.”  Def.'s Supp. Mot., ECF No. 56, at 18 (citing district court cases applying the rationale of *Johnson* to mandatory Guidelines).  “And because the mandatory Career Offender Guideline fixed the permissible range of sentences, the same “twin concerns underlying the vagueness doctrine — providing notice and preventing arbitrary enforcement[,] *Beckles*, 137 S. Ct. at 894 — that animated the Supreme Court's holding in *Johnson* are implicated and the mandatory Career Offender Guideline is void for vagueness.”  Def's Supp. Mot., ECF No. 56, at 19.  Defendant notes that “[t]he government suggests that there is something fundamentally different about the way in which the ACCA “fixed” sentences and the mandatory Guidelines, because under the mandatory Guidelines a court could always depart.”  Def.'s Reply, ECF No. 66, at 30.  “But the government misreads the degree to which, in practice, the ACCA “fixed” the maximum sentence and conversely, the mandatory Guidelines authorized departures.”

26

*Id.*; *see Moore v. United States*, 871 F.3d 72, 82 (2017) ("[If]f one takes seriously, as we must, the Court's description of the pre-*Booker* guidelines as "mandatory," one might describe the residual clause of [those] guidelines as simply the ACCA's residual clause with a broader reach, in that it fixed increased minimum and maximum sentences for a broader range of underlying crimes.")

### 3. <u>Analysis of Existing Case Law</u>

Similar arguments were presented by the parties in the case of *United States v. Navarro Hammond*, 351 F. Supp. 3d 106 (D.D.C. 2018), where the defendant filed a Section 2255 motion challenging his career offender status under the Guidelines, which relied on application of the residual clause's definition of crime of violence.  In that case, the Honorable Beryl Howell, Chief Judge, began her analysis with the proposition that the Supreme Court in *Johnson* invalidated sentences enhanced in reliance on the ACCA's residual clause on grounds of violation of Due Process because the indeterminate nature of the clause "denies fair notice to defendants and invites arbitrary enforcement by judges" *Johnson*, 135 S. Ct. at 2557.  Denial of fair notice occurs where a law "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime," and increases punishment based on an indecipherable "serious potential risk" standard."  *Id.* at 2558. Chief Judge Howell concluded that the mandatory Guidelines sentences under the residual clause "share each fault cited by the Supreme Court [in *Johnson*], insofar as the mandatory Guidelines "fixed sentences" and "implicate *Johnson's* twin concerns."  *Navarro Hammond,* 35 F. Supp. 3d at 125.   This is because: (1) the mandatory Guidelines had "the force of law;" (2) the mandatory Guidelines' residual clause's definition of crime of violence "tied risk to the hypothetical ordinary case;" and (3) the mandatory Guidelines enhanced sentences when the past crime posed "serious potential risk," which is language identical to the ACCA's standard deemed unworkable.  *Id.* (internal citations omitted).

Furthermore, while the Government in *Navarro Hammond* (and here) relied on the Eleventh Circuit's finding that a career offender sentence under the mandatory Guidelines could never exceed a statutory maximum, *see* Govt. Opp'n, ECF No. 63, at 37-38, "that argument overlooks the mandatory Guidelines' effect on the sentencing floor [and] [s]etting a mandatory minimum [also] 'fix[es] the permissible sentences for criminal offenses.'" *Navarro Hammond*, 351 F. Supp. 3d at 128.   Chief Judge Howell concluded that "*Johnson's* rule – the right not to have a sentence fixed by an indeterminate and wide-ranging residual clause – provides the answer" that a mandatory Guidelines sentence enhanced through application of the residual clause is unconstitutional. *Navarro Hammond*, *id.* at 129.

Accordingly, upon consideration of the cases cited, and taking into account the twin concerns in *Johnson*, this Court finds that *Johnson* may be extended to the Career Offender Guideline, and the residual clause of the Career Offender Guideline may be challenged on vagueness grounds.   Accordingly, the Government's arguments to the contrary should both be denied. *See Chaidez v. United States*, 568 U.S. 342, 347 (2013) ( "[A] case does *not* 'announce a new rule, [when] it [is] merely an application of the principle that governed' a prior decision to a different set of facts." *Id.* at 347-48 (quoting *Teague*, 489 U.S. at 307) (emphasis and alternations in original)); *see also United States v. Carter,* No. 04-cr-155, 2019 WL 5580091, at *14-15 (D.D.C. Oct. 29, 2019) (holding invalidated the residual clause of the Career Offender Guideline); *Cross v. United States*, 892 F.3d 288, 299 (7th Cir. 2018) (holding that *Johnson* invalidates the mandatory guidelines' residual clause and finding that "*Johnson* honed in on a confluence of two factors that deprived the residual clause of the ACCA of sufficiently definite meaning," by requiring courts to ask "how much risk the crimes of conviction posed and the degree of risk required of violent felonies."); *Shea v. United States*, 976 F.3d 63, 66 (1st Cir. 2020) (holding that

*Johnson* made the residual clause of the mandatory Sentencing Guidelines unconstitutional), at 75 (finding that "no reasonable jurist could think the rule in *Johnson* applies only to statutes" and that it is "crystal clear that the same two-pronged vagueness test that governed *Johnson* applies with equal force to regulations that have the force of law" such as the mandatory guidelines that "did fix the permissible range of sentences") (italics deleted).   The Court turns now to whether Defendant was properly subject to a career offender designation.

### E. **Defendant's Career Offender Designation**

Mr. Sumner argues that he no longer qualifies for an enhanced sentence under the Career Offender Guideline in light of the Supreme Court's holding in *Johnson*.  To be a career offender, Mr. Sumner would need his instant offense of attempted armed bank robbery to be a crime of violence, and he would need to have two prior offenses qualify as well.  "In order to prevail on the merits of his motion, [Mr. Sumner] must show that his convictions are not [crimes of violence] under either the elements clause or the enumerated clause, which remain valid after *Johnson*." *Charles Booker*, 240 F. Supp. 3d at 169.   The Court notes that, in its opposition, the Government refrained from analyzing this issue "[i]n the interest of judicial efficiency," but requested also the opportunity to provide supplemental briefing if the Court determined that "a ruling on defendant's motion requires a determination of whether defendant's instant and prior convictions constitute crimes of violence . . . [under the] elements clause of . . . the sentencing guidelines[.]"  Govt. Opp'n, ECF No. 63, at 44.  Accordingly, the Court issued a Minute Order directing the parties to submit supplemental briefing on this issue, and briefing has been completed.

### 1. **Categorical Approach**

When determining whether an offense qualifies as a "crime of violence" under the enumerated and elements clauses, a sentencing court must "consider the offense generically" by

examining the offense only "in terms of how the law defines the offense and not in terms of how" the individual defendant "might have committed it on a particular occasion." *Sheffield*, 832 F.3d at 314 (quotation omitted).   Under such a categorical approach, facts underlying the prior convictions are "irrelevant." *Mathis v. United States*, 136 S. Ct. 2243, 2253 (2016); *see id.* ("Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence.")   In applying a categorical approach, courts look "only to the statutory definitions — *i.e.*, the elements — of a defendant's [offenses] and *not* to the particular facts underlying those convictions." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (emphasis in original, quotation marks and citation omitted); *see Mathis*, 136 S. Ct. at 2248 (explaining that elements are "constituent parts" of the way in which a crime is legally defined, while facts are "extraneous to the crime's legal requirements").

A "prior conviction qualifies as [a] predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Sheffield*, 832 F.3d at 314 (quoting *Descamps*, 133 S. Ct. at 2281); *see Mathis*, 136 S. Ct. at 2248 ("[I]f the crime of conviction covers any more conduct than the generic offense, then it is not [a crime of violence] — even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries.")   In certain circumstances, when a statute of conviction "list[s] elements in the alternative, and thereby define[s] multiple crimes," *i.e.*, the statute is "divisible," the Court may use a "modified categorical approach." *Mathis*, 136 S. Ct. at 2249.   Under this approach, the sentencing court may look to "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* This approach is used only for statutes "that list[ ] multiple elements disjunctively," *id.*, but a "statute's listing of disjunctive means does nothing to mitigate the possible unfairness of basing an increased

30

penalty on something not legally necessary to a prior conviction." *Id.* at 2253.

### 2. Mr. Sumner's Prior Criminal Offenses

In the United States' [73] Supplemental Brief, the Government notes that U.S.S.G. § 4B1.1(a) requires two prior qualifying predicate convictions, and further that "Defendant's convictions on June 4, 1986, for rape and involuntary intercourse were imposed on the same date based on the same criminal episode, and thus would not independently qualify defendant for [ ] career offender status . . . " Govt. Supp. Brief, ECF No. 73, at 3 n.3. " [W]hile the government does not concede that the convictions for those offenses would *not* be valid predicates, [it] do[es] not rely on those prior convictions for purposes of these proceedings." *Id.* Defendant's Response thereto indicates that: "[g]iven that the parties agree [that] whether Pennsylvania robbery qualifies as a valid predicate is outcome determinative as to whether Mr. Sumner qualifies for either sentencing enhancement, Mr. Sumner will only address that offense below." Def.'s Response, ECF No. 74, at 2. Accordingly, this Court's analysis is limited to whether Mr. Sumner's Pennsylvania robbery convictions remain qualifying crimes of violence.

For both his 1986 and 1991 Pennsylvania robbery convictions, Mr. Sumner pleaded guilty to first-degree robbery. *See* Information as to Previous Convictions, ECF No. 8. Under Pennsylvania law, a person is guilty of first-degree robbery "if, in the course of committing a theft, he": (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; (iii) commits or threatens immediately to commit any felony of the first or second degree . . . Govt. Supp. Brief, ECF No. 73 at 10 (citing, in relevant part, 18 Pa. Cons. Stat. § 3701(a)(1)(i)-(iii)). Because Defendant was "charged under all of the then-extant subsections of the Pennsylvania robbery statute," and "available judicial records indicate only that he pleaded guilty to 'F1,'" the basis for Mr. Sumner's robbery convictions cannot

be narrowed for purposes of applying the categorical analysis.  Govt. Response, ECF No. 73, at 10.[9]

a. **Elements Clause**

Under the elements clause, the offense being analyzed as a crime of violence must have as an element the "use, attempted use, or threatened use of physical force against the person of another[.]"  U.S.S.G. Section 4B1.2 (a)(i) (2000).  In its Supplemental Brief, the Government discusses *Borden v. United States*, 141 S. Ct. 1817 (2021).  In that case, the Supreme Court analyzed the elements clause of the ACCA, with a focus on the phrase "against the person of another," which modifies the phrase "the use, attempted use, or threatened use of physical force," and the Supreme Court concluded that a "violent felony" as defined under the ACCA does not include offenses that can be committed with a reckless *mens rea. See id.* at 1825-27.  The Supreme Court reaffirmed that the ACCA's elements clause encompasses offenses that require a "purposeful" or "knowing" *mens rea*.  *Id.* at 1826.

The Government acknowledges that the elements clause at issue here includes wording that is identical to that in the ACCA, as was considered in *Borden*.  Govt. Suppl. Brief, ECF No. 73, at 5 n. 4.  Furthermore, the Government recognizes that "Subsection (i) and subsection (iii) of the Pennsylvania robbery statute may both be committed recklessly."  Govt. Supp. Brief, ECF No. 73, at 10 ; *see* 18 Pa. Cons. Stat. § 302(c) (setting a default *mens rea* for an element of the offense).  Accordingly, the Government concedes that "under *Borden*, defendant's Pennsylvania robbery convictions in violation of 18 Pa. Cons. Stat. § 3701(a)(1) no longer satisfy the elements clause[ ]

---

[9] Defendant asserts that "robbery in the first degree is not divisible; in other words subsections (i), (ii), and (iii) are mere means, as opposed to elements that a jury must find to sustain a conviction or a defendant must admit when he pleads guilty."  Def.'s Supp. Mot., ECF No. 56, at 53 (citing *Mathis*, 136 S. Ct. at 2248).

of . . . U.S.S.G. § 4B1.2(a)(1)." Govt. Supp. Brief, ECF No. 73, at 11. Because the inapplicability of the elements clause has been conceded, the Court now turns to the enumerated offenses clause of the Career Offender Guideline.

**b. Enumerated Clause**

Under the Career Offender Guideline's enumerated clause, an offense qualifies as a crime of violence if it meets the generic definition of one of the enumerated offenses, which are: "burglary of a dwelling, arson or extortion, [or a crime that] involves use of explosives [.]" U.S.S.G. § 4B1.2(a)(2) (2000). Below, the Court considers the Government's two-part argument with regard to the enumerated clause.

**i. Reliance on Commentary**

The Government asserts that "although "robbery" did not appear in the enumerated offenses clause of U.S.S.G. § 4B1.2(a)(2) as it existed at the time of defendant's sentencing, it *did* appear as an enumerated "crime of violence" in Application note 1 in the commentary to the U.S.S.G. § 4B1.2." *See* Govt. Supp. Brief, ECF No. 73, at 8 (agreeing with Defendant that the offenses enumerated in Application note 1 "serve to interpret the residual clause of U.S.S.G. § 4B1.2(a)(2)" but arguing also that the commentary defeats any vagueness challenge); *see United States v. Miller*, 868 F.3d 1182, 1187 (10th Cir. 2017) ("But we need not weigh in today [whether the mandatory Guidelines are amenable to vagueness challenges] for this case has a simple resolution[ ]" insofar as the defendant "cannot mount a vagueness challenge to his enhanced sentence, because the enumeration of robbery in the commentary to the career-offender guideline sufficiently narrows the application of the residual clause to [defendant's] conduct"). In *Miller*, the defendant therein argued that the commentary was "not authoritative because it [was] inconsistent with the text" of Section 4B1.2(a), and he argued that the court should "first excise

the residual clause, and then consider the application note's relationship to the guideline text." *Id.* at 1188. The Tenth Circuit found however that the defendant confused the "'normal order of operations' in analyzing vagueness challenges." Id. (quoting *Beckles*, 137 S. Ct. at 897 n.8 (Ginsburg, J., concurring)); *see Beckles*, at 897 (noting that the Supreme Court has "routinely rejected, in a variety of contexts, vagueness claims where a clarifying construction rendered an otherwise enigmatic provision clear as applied to the challenger") (string citing cases).

A "narrowing construction of an otherwise vague statute 'provides a person of ordinary intelligence fair notice of what is prohibited.'" *Miller*, 868 F. 3d at 1188-1189 (citing *Holder*, 561 U.S. at 20) (quotation omitted). The *Miller* court concluded that "[a]ssuming the residual clause in §4B1.2(a) would otherwise be unconstitutionally vague, the enumeration of robbery in Application Note 1 renders the clause's application to Miller sufficiently clear." *Id*. at 1189. *But see D'Antoni v. United States*, 916 F.3d 658, 663 n.3 (7th Cir. 2019) (rejecting the reasoning set forth in *Miller* in favor of the Seventh Circuit's decisions in *Cross v. United States*, 892 F.3d 288, 294, 306 (7th Cir. 2018) (finding the career offender sentencing guideline's residual clause unconstitutionally vague) and *United States v. Rollins*, 836 F.3d 737, 743 (7th Cir. 2016) ("To sum up, application note 1 is enforceable only as an interpretation of the residual clause in §4B1.2(a)(2); it has no independent legal force. The residual clause is invalid, and the application note's list of qualifying crimes cannot alone supply the basis for a career-offender designation.")

Defendant argues first that an offense cannot qualify as an enumerated offense based on commentary alone, and moreover, an "application note is only operative if it is not inconsistent with the guideline's plain text." Def.'s Response, ECF No. 74, at 4; *see Stinson v. United States*, 508 U.S. 36, 43 (1993) ("[W]here commentary is inconsistent with [Guidelines] text, text controls."); *United States v. Shell*, 789 F.3d 335, 340 (4th Cir. 2015) ("But it is the text, of course,

that takes precedence."); *see also United States v. Winstead*, 890 F.3d 1082, 1090-91 (D.C. Cir.

2018) ("If [the Guideline and commentary] are inconsistent, 'the Sentencing Reform Act itself

commands compliance with the guideline.'") (quoting *Stinson*, 508 U.S. at 43).  Defendant relies

on *Rollins, supra.* and *United States v. Bell*. 840 F.3d 963, 968 (8th Cir. 2016) (where the court

noted that robbery was "not one of the specifically-enumerated crimes listed in the version of

§4B1.2(a)(2) which applied to [defendant]"), *overruled on other grounds by United States v.

Swopes*, 886 F.3d 668 (8th Cir. 2018).  In *Bell*, *id.*, the court noted that it agreed with the First

Circuit's reasoning in *Soto-Rivera*, as follows:

> Prior to *Johnson*, the residual clause may have served as an anchor for the commentary's
> inclusion of "robbery" as a crime of violence because it "otherwise involve[d] conduct that
> presents a serious potential risk of physical injury to another."  U.S.S.G. §4B1.2(a)(2)
> (effective November 1, 2014).  Post-*Johnson*, however, §4B1.2's commentary, standing
> alone, cannot serve as an independent basis for a conviction to qualify as a crime of
> violence because "doing so would be inconsistent with the post-*Johnson* text of the
> Guideline itself."  *Soto-Rivera,* 811 F.3d at 60.

Defendant contends further that "[n]umerous district courts understand the same."  Def.'s

Response, ECF No. 74, at 5-7 (string citing district court cases holding that reliance on the

commentary is misplaced); *see, e.g., United States v. Walker*, 214 F. Supp. 3d 866, 875 (N.D. Cal.

2016)  ("Robbery is neither enumerated in the text of § 4B1.2, nor does it qualify as a crime of

violence under the elements clause.  Therefore it must be an example of an offense that previously

qualified as a crime of violence under the residual clause.  Following *Johnson*, the residual clause

is unconstitutionally vague[.]"); *Haffner v. United States*, 2016 WL 6897812, at *5 (W.D. Wash.

Nov. 23, 2016) ("Qualification under the enumerated clause is quickly dispensed with: robbery is

not listed among the enumerated offenses.  The Government argues that the inclusion of "robbery"

in Application Note 1 of the Commentary to the Guidelines incorporates robbery into the

enumerated offenses of this section of the USSG - the Court does not agree."); *United States v.*

*Chappelle*, 2020 WL 5441541, at *3 (S.D.N.Y. Sept. 9, 2020) ("Accordingly, it appears that Application Note 1 adds to, and does not merely explain the application of, the guideline and therefore is not an interpretation to which the court must defer in applying the career offender guideline.")

### ii. Generic Definition of Robbery

After relying on commentary to get past the first hurdle, the Government contends next that "so long as the statutes of conviction "substantially correspond to" the generic definition of "robbery," as enumerated in Application Note 1," Mr. Sumner's two Pennsylvania convictions for first-degree robbery would therefore qualify as "crimes of violence" under the Guidelines.   Govt. Supp. Brief, ECF No. 73, at 17; *see Taylor v. United States*, 495 U.S. 575, 589 (1990) (the generic definition of a crime must "roughly correspond[ ] to the definitions of [the crime] in a majority of the States' criminal codes.")  "[A]ll fifty states define robbery, essentially, as the <u>taking of property from another person or from the immediate presence of another person by force or intimidation</u>." *Id.* (citing *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010) (emphasis added by the Court).

The Government contends that "all three subsections of first-degree robbery under Pennsylvania law require the use, attempted use, or threatened use of physical force in the course of committing a theft, and thus substantially correspond to the elements of the generic offense of 'robbery.'"  Govt. Supp. Brief, ECF No. 73, at 17; *see Commonwealth v. Brown,* 484 A.2d 738, 740-741 (Pa. 1984) (exploring the development of the Pennsylvania robbery statute [based on the Model Penal Code] and explaining that all types of robbery under the statute require force, while the degree of such force necessary distinguishes the degree of the crime).[10]  The Government

---

[10] Defendant challenges the Government's reliance on *Commonwealth v. Brown*, 484 A. 2d 738,

indicates that "it is clear that [even] subsection (iii) cannot be violated without proof of the infliction or threat of physical force."  Govt. Supp. Brief, ECF No. 73, at 15; *see Greek Radio Network of Am., Inc. v. Vlasopoulos*, 731 F. Supp. 1227, 1235 (E.D. Pa. 1990) (confirming that subsection (iii) cannot be offended absent violent force).[11]   Accordingly, the Government concludes that, for purposes of determining Mr. Sumner's career offender status pursuant to U.S.S.G. Section 4B1.2,  Defendant's two prior Pennsylvania robbery convictions remain "crimes of violence."  Govt. Supp. Brief, ECF No. 73, at 17.

Defendant counters however that, even assuming that "the commentary had independent force," the Pennsylvania robbery would still fail to qualify under the enumerated clause because "it is not a categorical match with generic robbery."  Def.'s Response, ECF No. 74, at 8.  More specifically, Defendant argues that Pennsylvania robbery, unlike generic robbery, can be accomplished recklessly (Def.'s Response, ECF No. 74, at 8-10) , without force (*id.*, at 10-18) and it does not require that stolen property be taken "from the person or presence of another."  Def's Response Supp., ECF No. 75, at 1.

### a. Reckless Conduct

Defendant notes  that "the government has already surveyed the states in its briefing on *Borden* and made clear that the *vast* majority of states find that reckless conduct is insufficient for robbery [and] [i]t is only a *minority* of states that allow for reckless causation of injury."  Def.'s

---

740 (Pa. 1984), an appeal from a conviction for a third-degree robbery, on grounds that *Brown* does not even mention subsection (iii) but instead interpreted subsection (v) to require "any amount of force applied to a person."

[11] Defendant notes that "*Greek Radio Network* cited *no* case involving subsection (iii) to reach its conclusion [but] [r]ather, it relied solely on cases considering the language about "force however slight" in subsection (v)."  Def.'s Response, ECF No. 74, at 17; *see Greek Radio Network*, 731 F. Supp. at 1235 (citations omitted).

Response, ECF No. 74, at 8 (emphasis in original); *see United States v. Armijo*, 651 F.3d 1226, 1236 (10th Cir. 2011) (finding that "this court has unequivocally held that the text of § 4B1.2 only reaches purposeful or international behavior" and excludes offenses that tolerate reckless conduct).[12]  Defendant contends that only seven states (including Pennsylvania) "say that reckless conduct is sufficient" while "40 out of 50 states find that more than reckless conduct is required." Def.'s Response, ECF No. 74, at 8-9.  Nor do the federal robbery statutes recognize recklessness as to the use of force.  *Id.* at 9 (string citing cases); *see, e.g., United States v. Carr*, 946 F.3d 598, 607 n.9 (D.C. Cir. 2020) (holding that federal bank robbery under 18 U.S.C. § 2113 "requires that the defendant have knowledge that he is threatening someone").  Furthermore, Defendant asserts that District of Columbia law "also requires purposeful conduct as to the force or violence element of robbery."  Def.'s Response, ECF No. 74, at 9 (string citing cases).  Defendant concludes that there is a consensus that recklessness is insufficient and "a reckless *mens rea* as to force does *not* comport with "the generic sense in which the term is now used in the criminal codes of most States." *Id.* at 10 (emphasis in original) (citing *Taylor*, 495 U.S. at 598).  Accordingly, Defendant concludes that Pennsylvania robbery is not a categorical match for generic robbery in this regard. The Court turns now to Defendant's contention that unlike generic robbery, Pennsylvania robbery can be accomplished <u>without</u> force.

**b. <u>Lack of Force</u>**

Defendant focuses on subsection (iii) of the Pennsylvania robbery statute  – applicable to a defendant, who "commits or threatens immediately to commit any felony of the first or second degree" while "in the course of committing a theft."  Def.'s Response, ECF No. 74, at 12-18.  The

---

[12] *See United States v. McCollum*, 885 F.3d 300, 308 (4th Cir. 2018) (finding "that the definition adopted by thirty-two states, the federal government, and the District of Columbia established a "broad consensus" sufficient to establish the generic, contemporary definition of a crime").

Government "does not dispute that there are myriad first-and second-degree felonies under Pennsylvania law that do not include as elements either the use or threat of force, as required to commit "robbery[.]" Gov't Opp'n, ECF No. 73, at 11. But, as previously indicated herein, the Government contends that an examination of Pennsylvania law reveals that subsection (iii) "*does* require as an element the use or threat of physical force[.]" *Id.* at 11-12. The Government notes that it "elsewhere previously conceded that subsection (iii) of the Pennsylvania robbery statute does *not* require force." Govt. Supp. Brief, ECF No. 73, at 12 n.7; *see United States v. Singleton*, 252 F. Supp. 3d 423, 430 (E.D. Pa. 2017) ("[T]he government concedes (as it must) that § 3701(a)(1)(iii) does not require force, because some first- and second-degree felonies are nonviolent – say, certain types of identity theft, *see* Pa. Cons. Stat. § 4120(c).") The Government contends however its "earlier, mistaken concession should not be deemed binding," Govt. Supp. Brief, ECF No. 73, at 12 n.7,[13] because such a "broad reading of subsection (iii) would lead to absurdities [*i.e.*, conversion of all first- and second-degree theft in Pennsylvania into a first-degree felony robbery]." *Id.* at 12; *see Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454 (1989) (the plain language of a statute does not control where it leads to absurd results); *but see United States v. Long*, 997 F.3d 342, 356 (D.C. Cir. 2021) ([C]ourts may not use the absurdity canon to set aside plain text unless 'the absurdity and injustice of applying the provision to the case[ ] would be so monstrous that all mankind would, without hesitation, unite in rejecting the application.") (quoting *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 452 (1901)).

---

[13] Defendant takes issue with the Government's change of position, which is presumably based on its "substantial additional research." Def.'s Response, ECF No. 74, at 12 (quoting Govt. Supp. Brief, ECF No. 73, at 12 n.7); *see Bradshaw v. Stumpf*, 545 U.S. 175, 189 (2005) ("[S]erious questions are raised when the sovereign itself takes inconsistent positions in two separate criminal proceedings against two of its citizens.") (Souter, J. & Ginsburg, J., concurring).

Defendant argues that, "[u]nder the categorical approach, the Court looks 'only to . . . the statutory definition of the prior offense,'"  Def.'s Response, ECF No. 74., at 12 (quoting *Taylor*, 495 U.S. at 602); *see Connecticut Nat. Bank v. Germaine*, 503 U.S. 249, 253-54 (1992) (When "interpreting a statute[,] a court should always turn first to one, cardinal canon before all others. . . that a legislature says in a statute what it means and means in a statute what it says there.") Taking that approach, the plain text of 18 Pa. Cons. Stat. Section 3701 (a)(1)(iii) defines robbery as the commission of a first- or second-degree felony in the course of a theft.  There is "[no] reference to force, violence, injury, pain, or physical harm."  Def.'s Response, ECF No. 74, at 13; *see also United States v. Blair*, 734 F.3d 218, 225 (3d Cir. 2013) (in analyzing a defendant's conviction under the Pennsylvania statute pertaining to first-degree robbery, the Third Circuit commented that "the least culpable subsection is subsection (iii), which criminalizes robbery wherein the perpetrator 'commits or threatens immediately to commit any felony of the first or second degree,' and . . . some felonies of the first and second degree involve no violence") (internal citation omitted).

Furthermore, Defendant counters the "absurdities" proffered by the Government by distinguishing between theft and subsection (iii), which involves theft plus commission of a first- or second-degree felony.   In fact, Defendant argues that the "government's reading would lead to absurdities" by "render[ing] the subsection mere surplusage"  insofar as it would require defendant to commit or threaten to commit a first- or second-degree felony that also requires infliction or threat of serious bodily injury, and thus duplicate subsections (i) and (ii).  Def.'s Response, ECF No. 74, at 14.   Defendant asserts additionally that:

> [T]he Government attempts to elevate the legislative history above the plain text by relying upon a commentary note in the Model Penal Code's robbery provision (upon which the Pennsylvania statute was modeled) that says that "robbery is distinguished from ordinary larceny by the presence of the victim and the use or threat of violence."  Gov't Supp. at 12.

> Notwithstanding this single sentence of commentary, the plain language of the relevant subsection of the MPC (like its twin in subsection (iii) of the Pennsylvania statute), requires no force whatsoever,; instead, it requires only that the defendant "commits or threatens to commit any felony of the first or second degree."  Model Penal Code § 222.1 (1)(c).

Def.'s Response, ECF No. 74, at 15.  Accordingly, Defendant concludes that even if the drafting history of the MPC were relevant, "it *supports* Mr. Sumner's argument that subsection (iii) of the Pennsylvania robbery statute does not require ordinary force." *Id.* at 15-16 (emphasis in original).

Finally, Defendant proffers a detailed analysis, *see* Def.'s Response, ECF No. 74, at 17-21, to counter the Government's [one paragraph] statement that "to the government's knowledge, prosecutors in Pennsylvania do not ever charge robbery in violation of subsection (iii) for nonviolent conduct."  Govt. Supp. Brief, ECF No. 73, at 16; *see United States v. Covington*, 880 F.3d 129, 135 (4th Cir. 2018) (assessing crime of violence "based on the text of the statute as well as the examination of the convictions under the statute").[14]  In summary, Defendant indicates that this is without legal relevance because "the majority of circuit courts agree that courts do not apply the so-called "realistic probability" test [proposed by the Government] where "[t]he elements of [the offense] are clear," because "no application of 'legal imagination' to the . . . statute is necessary."  Def.'s Response, ECF No. 74, at 17 (quoting *Jean-Louis v. Attorney General of the U.S.*, 582 F.3d 462, 481 (3d Cir. 2009)).  If "the elements of the statutory offense" sweep in non-violence conduct, then "the possibility of conviction . . . , however remote, is sufficient" to show that the statute does not qualify as a predicate offense, and "proof of actual application of the statute of conviction to the conduct asserted is unnecessary."  *Id.* (quoting *Jean-Louis*, 582 F. 3d at 471).

---

[14] The Government notes that "every published application of subsection (iii) involves the threat to commit a violent crime."  Govt. Supp. Response, ECF No 73, at 16 (citing two Pennsylvania Superior Court cases).

Defendant contends that because the text of subsection (iii) clearly sweeps in non-violent conduct, the Court need not look to the reasonable probability test, and the Government's suggestion that it do so "misses the point of the categorical approach" and "wrenches the Supreme Court's [realistic probability test] language in *Duenas-Alvarez* from its context." Def's Response, ECF No. 74, at 21 (quoting *Aparicio-Soria*, 740 F.3d at 157-68).[15]   Accordingly, Defendant concludes, and this Court agrees that the text of subsection (iii) of the Pennsylvania robbery statutes is broad enough to encompass non-violent conduct, and the Government's non-textural sources do not support a departure from the plain text, and therefore,  Defendant's Pennsylvania robbery convictions do not qualify as crimes of violence.

### c. Interpreting the phrase "from the person or presence of another"

Defendant contends further that the Second Circuit has explained that "the generic definition of robbery includes, as an element, that the stolen property be taken 'from the person or in the presence of' the owner or victim[,]" and twenty-seven states and the District of Columbia "include the presence element in their definitions of robbery."  *United States v. Pereira-Gomez*, 903 F.3d 155, 163 & n.26 (2d Cir. 2018) (citing cases from multiple jurisdictions).   This requirement that property be taken from the person or presence of another is also included in standard definitions of robbery.  *See* Def.'s Response Supp., ECF No. 75, at 2 (citations omitted). Defendant argues that "like the New York robbery statute found overbroad in *Pereira-Gomez*, subsection (iii) of the Pennsylvania robbery statute has no person or presence requirement [;

---

[15] The Supreme Court in *Duenaz-Alvarez* created the so-called "realistic probability" test, which requires the demonstration of a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime[,]" which requires that an offender "at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."  *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

instead,] it only requires committing or threatening to commit a first- or second-degree felony in the course of committing a theft." Def.'s Response Supp., ECF No. 75, at 3; *see* 18 Pa. Const. Stat. § 3701(a)(1)(iii), There is no requirement that the theft be "from the person or presence of another," and Defendant proffers that the theft could be destruction of an agricultural crop used in research or accessing a trade secret, for example. Def.'s Response Supp., ECF No. 75, at 3. Accordingly, because the Pennsylvania robbery statute "sweeps more broadly than the generic crime," this is another reason that it cannot be a valid predicate under the enumerated clause. *Descamps v. United States*, 570 U.S. 254, 261 (2013).

### IV. CONCLUSION

Upon a searching review of the parties' submissions, the relevant authorities, and the record as a whole, the Court finds that Mr. Sumner's [56] Supplemental Motion to Vacate Judgment under 28 U.S.C. § 2255 shall be GRANTED IN PART AND DENIED IN PART. More specifically, Mr. Sumner's claim based on application of 18 U.S.C. § 3559 is DENIED because this claim was not raised before the D.C. Circuit or certified by the D.C. Circuit, as explained herein, but Mr. Sumner's claim based upon application of the Career Offender Guideline is GRANTED. With regard to his Career Offender Guideline claim, the Court finds that Defendant is not barred from bringing this claim merely because he entered into a plea agreement, as there was no waiver of his right to pursue a Section 2255 collateral attack on the constitutionality of his sentence. Nor does this Court agree with the Government's argument that Mr. Sumner's plea agreement renders his claims procedurally defaulted, as Defendant has demonstrated cause and prejudice. This Court finds further that the ruling in *Johnson* may be extended to the Career Offender Guideline, and the residual clause of the Career Offender Guideline may be challenged on vagueness grounds.

With regard to Defendant's designation as a "career offender," based on the parties'

arguments, this Court focused on Defendant's Pennsylvania robbery charges and the applicability of the enumerated clause, as the inapplicability of the elements clause was conceded by the Government. Assuming *arguendo* that the Government's reliance on commentary to the Career Offender Guideline gets it past the hurdle that "robbery" did not appear in the enumerated [offenses] clause, Defendant's Pennsylvania robbery charges still do not qualify as crimes of violence thereunder.   That is because the Pennsylvania robbery statute is broad enough to encompass non-violent conduct, and furthermore, there is no person or presence requirement. Accordingly, this Court concludes that Mr. Sumner does not qualify as a career offender, and Defendant's resentencing is warranted.   A separate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT COURT